| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

---

UNITED STATES OF AMERICA

– against –  **MEMORANDUM & ORDER**

JEROME MARTIN,  03-CR-795 (ERK)

             Defendant.

---

Korman, *J.*:

    Jerome Martin moves to reduce his sentence under the First Step Act of 2018, Pub. L. No. 115-391 § 404, 132 Stat. 5194, 5222.

## BACKGROUND

    On July 10, 2006, Martin pleaded guilty to count eight of the superseding indictment charging him with violating 21 U.S.C. § 841(b)(1)(A)(iii) by "knowingly and intentionally distribut[ing] and possess[ing] with intent to distribute fifty grams or more of a substance containing cocaine base." Superseding Indictment 20-21, ECF No. 153; Plea Minutes, ECF No. 265. On June 6, 2007, Judge David G. Trager sentenced Martin, a prior felony drug offender, to the then-mandatory minimum 240 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2006); Sentencing Minutes, ECF No. 313. Although the indictment specified a drug quantity of "fifty grams or more," in the plea agreement, Martin "stipulate[d] that his sentence shall be calculated based on a drug type and quantity of at least 1.5 kilograms of cocaine base." Plea Agreement ¶ 2, ECF No. 633-1.

    In 2010, Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, 2372 (codified at 21 U.S.C. § 841(b)(1)), which increased the drug quantity triggering a mandatory-minimum ten-year sentence from 50 grams of cocaine base to 280 grams of cocaine

base. On that basis, among others, Martin previously moved for a sentencing reduction, which was denied because Martin's sentence was based on the statutory minimum sentence under 21 U.S.C. § 841(b)(1)(A), not a decreased sentencing range, and the Fair Sentencing Act did not apply retroactively. *Martin v. United States*, 834 F. Supp. 2d 115, 137-38 (E.D.N.Y. 2011). In dicta, Judge Matsumoto further reasoned that "even if the FSA were applied retroactively, it would be of no benefit to Martin" because "[h]e stipulated in his plea agreement that 'his sentence shall be calculated on a drug type and quantity of at least 1.5 kilograms of cocaine base,' which is clearly in excess of the increased 280-gram threshold quantity of cocaine base required for the 20-year mandatory minimum sentence to apply." *Id.* at 139.

In 2018, Congress passed the First Step Act, which made Section 2 of the Fair Sentencing Act retroactive. 132 Stat. at 5222. Under Section 404(b) of the First Step Act, courts "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." If Martin is eligible for relief, he is subject to a mandatory minimum sentence of 10 years, rather than 20 years. *See United States v. Rose*, — F. Supp. 3d —, 2019 WL 2314479, at *2 (S.D.N.Y. May 24, 2019). Martin now moves for relief, asking that I impose a sentence of 180 months' imprisonment. Notably, Judge Cogan granted relief under the First Step Act to Martin's codefendant, before later vacating that order as moot on other grounds. *See United States v. Martin*, 2019 WL 1558817 (E.D.N.Y. Apr. 10, 2019), *vacated* (Apr. 22, 2019).

## DISCUSSION

### I. Martin Is Eligible for a Sentence Reduction Under the First Step Act

The prosecution argues that Martin is not eligible for a sentencing reduction under the First Step Act because his violation is not a "covered offense," which Section 404(a) defines as "a

2

violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." (citations omitted). In the prosecution's view, "violation" refers to the offense conduct, not the statute of conviction. *Cf. Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985) (noting in dicta that civil RICO statute's use of term "'violation' does not imply a criminal conviction," just "a failure to adhere to legal requirements" based on neighboring statutory provisions). Under this logic, because Martin admitted in the plea agreement and at sentencing that the crime involved at least 1.5 kilograms of cocaine base—far more than the 280 grams now required to trigger the 10-year mandatory minimum—it is of no consequence that the indictment specified only "fifty grams or more." *See, e.g.*, *United States v. Blocker*, — F. Supp. 3d —, 2019 WL 2051957, at *3 (N.D. Fla. Apr. 25, 2019) (adopting this approach).

Following passage of the First Step Act, it appears a majority of district courts—including Judge Cogan's decision granting relief to Martin's codefendant—have read the statute differently. Those courts hold that "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."[1] *Martin*, 2019 WL 1558817, at *3 (quoting *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019)); *Rose*, 2019 WL 2314479, at *4; *see also United*

---

[1] The Second Circuit has rendered diverging opinions on a similar issue in two Fair Sentencing Act cases predating the First Step Act. In *United States v. Hamilton*, 579 F. App'x 34, 35 (2d Cir. 2014), the defendant was convicted of, and allocuted to, selling five grams of cocaine base. The district court, however, adopted the plea agreement's stipulation that the "offense involved at least 28 grams but less than 112 grams of cocaine base," which was also reflected in the presentence report (PSR). *Id.* The panel rejected the defendant's argument that the allocution—not the plea agreement—controlled because "the district court's adoption of the PSR's description of [the] offense and conduct is a finding as to drug quantity." *Id.* On the other hand, in *United States v. Whitmore*, 573 F. App'x 24, 25-26 (2d Cir. 2014), where the indictment specified only 50 grams of cocaine base and the defendant "admitted responsibility for at least 1,100 grams of cocaine base," the court held that "the offense charged in the indictment" controls. Neither case interpreted the First Step Act or what constitutes a "covered offense."

*States v. Allen*, — F. Supp. 3d —, 2019 WL 1877072, at *3 & n.4 (D. Conn. Apr. 26, 2019) (collecting cases and noting that "a growing number of courts" have adopted this view). I agree.

On its face, the statute's use of the term "violation" is ambiguous. But interpreting "violation of a criminal statute" to refer to the offense conduct presents several difficulties. *First*, this reading premises the availability of a sentence reduction on uncharged conduct not considered by the grand jury. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013) ("Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."); *United States v. Dupree*, 870 F.3d 62, 70 (2d Cir. 2017) ("[A]n indictment charging an aggravated drug offense under 21 U.S.C. § 841(b)(1)(A) 'must *always*' include a factual allegation of the drug quantity as an essential element." (quoting *United States v. Gonzalez*, 686 F.3d 122, 130 (2d Cir. 2012))). "While *Alleyne* and *Apprendi* do not provide retroactive relief," Congress *did* intend to apply current statutory penalties retroactively, and, we can assume, current constitutional protections. *Allen*, 2019 WL 1877072, at *4.

*Second*, in the face of an ambiguous criminal statute or sentencing guideline, the rule of lenity resolves ambiguities in favor of the defendant. "Simply put, the rule of lenity requires a sentencing court—when faced with an actual ambiguity over which of two penalties should apply—to select the lesser penalty." *United States v. Fields*, 113 F.3d 313, 325 (2d Cir. 1997). Multiple district courts interpreting this provision of the First Step Act have applied the rule of lenity. *See, e.g.*, *Allen*, 2019 WL 1877072, at *3; *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019).

*Third*, reading the statute to refer to offense conduct requires courts to "delv[e] into the particulars of the record to determine how this specific defendant committed his or her offense of conviction, and how those facts would have hypothetically affected the charges brought against

the defendant under the new statutory scheme." *Pierre*, 372 F. Supp. 3d at 22. This is especially problematic where the quantity of drugs at issue is at the margins. For example, if the indictment had charged a quantity of 50 or more grams but the defendant had admitted at sentencing to a quantity of 280.5 grams, it is highly unlikely that "a well-counseled defendant . . . and a reasonable prosecutor . . . would . . . reach a plea deal" based on 280 grams, triggering a ten-year mandatory minimum. *Id.* at 22. Yet the prosecution's reading would foreclose relief for this hypothetical defendant.

I find the prosecution's counterarguments unconvincing. The prosecution first argues that the "use of the word 'committed'" in "a violation of a Federal criminal statute . . . that was *committed* before August 3, 2010" highlights the offense conduct. Opp. Br. 5, ECF No. 633; 132 Stat. at 5222. But "committed" is easily read to refer solely to the timing of the conduct underlying the conviction. Put differently, the use of the term "committed" offers no insight on whether the "statute" referenced is the statute of conviction or the statute purportedly violated by the allocated conduct.

The prosecution also argues that the term "statutory" in "a violation of a Federal criminal statute, the *statutory* penalties for which were modified," would be redundant if "statutory" modified "statute" rather than "violation." Opp. Br. 5. Not so. The use of the term "statutory" simply indicates that the penalties modified must be the penalties prescribed by statute, as opposed to a change in the Sentencing Guidelines, for example. And "[w]hen given its most natural reading, the 'penalties' clause modifies the adjacent noun phrase, 'Federal criminal statute.'" *Rose*, 2019 WL 2314479, at *3 (engaging in extended textual analysis). Because the statute of conviction, not actual conduct, controls, Martin is eligible for relief.

5

## II. A Reduced Sentence Is Warranted

Having concluded that Martin is eligible for relief, I next determine if relief is warranted. The prosecution does not dispute that, if Martin is eligible for relief, the law permits me to impose a sentence of 180 months, as he requests.

While some courts have declined to consider the Section 3553(a) sentencing factors anew on a motion for relief under the First Step Act, looking instead to what sentence the original sentencing judge would have imposed, *see, e.g.*, *United States v. Martin*, 2019 WL 2289850, at *3-4 (E.D.N.Y. May 29, 2019); *Martin*, 2019 WL 1558817, at *4-5, others have rejected this approach, *see, e.g.*, *Rose*, 2019 WL 2314479, at *8; *United States v. Simons*, — F. Supp. 3d —, 2019 WL 1760840, at *7-8 (E.D.N.Y Apr. 22, 2019) (Weinstein, J.); *cf. United States v. Martinez*, 2019 WL 2433660, at *3 (S.D.N.Y. June 11, 2019) (parties agreed that court should apply Section 3553(a) factors). I agree that "[t]he text of the First Step Act, read in conjunction with other sentencing statutes, requires [me] to consider all relevant facts, including developments since the original sentence." *Rose*, 2019 WL 2314479, at *7.

Section 404(b) of the First Step Act permits "[a] court that *imposed* a sentence for a covered offense . . . [to] *impose* a reduced sentence." (emphasis added). The use of the term "impose" parallels 18 U.S.C. § 3661, which provides that "for the purpose of *imposing* an appropriate sentence," courts may consider without limitation the defendant's "background, character, and conduct"; 18 U.S.C. § 3553(a), which outlines the factors to be considered "in determining particular sentence to be *imposed*"; and 18 U.S.C. 3582(a), which directs courts to Section 3553(a) "if a term of imprisonment is to be *imposed*." *See Rose*, 2019 WL 2314479, at *7 (emphasis added). We assume that Congress used the term consistently in Section 404(b), incorporating these directives. *See id.* "The application of § 3553(a) factors to current facts is also more manageable

than the alternative, which would require the current sentencing court to reconstruct the original record and to imagine what the original judge would have done had he or she not been bound by the then-applicable mandatory minimum sentence." *Id.* at *8. In any event, the prosecution does not dispute that I may consider the Section 3553(a) factors and Martin's post-sentence conduct in evaluating whether a sentence reduction is warranted.[2]

At sentencing, Judge Trager imposed the mandatory minimum sentence of 240 months, substantially below the then-Guidelines range of 360 months to life. Sentencing Tr. 4, 18, ECF No. 633-3. To arrive at this range, the parties agreed to an offense level of 40 and a criminal-history level of either III or IV. *See id.* at 4. Judge Trager did not resolve which criminal-history level applied, but the range was the same under either. *See id.* Under today's Guidelines, the range would be either 210 to 262 months or 235 to 293 months, depending on whether a criminal-history level of III or IV applied. *See* PSR Addendum 2-3, ECF No. 640 (applying level IV); U.S. Sentencing Guidelines Manual § 2D1.1(c) (providing for base level of 32 (reduced from 38) for cocaine-base quantity of 1.5 kilograms). Thus, reducing Martin's sentence to 180 months would, at most, result in a downward departure of 55 months from the low-end of today's Guidelines, far less than Judge Trager's 120-month departure.

I agree with Judge Cogan that the original sentence accounted for "defendant's leadership role in the drug trafficking organization and the severity of his offense conduct" and "the sheer amount of cocaine base for which defendant admitted responsibility." *Martin*, 2019 WL 1558817, at *4. At the same time, "[b]ecause one of the purposes of the First Step Act is to allow a sentencing

---

[2] Some have argued by implication that "[i]f relief under the [First Step Act] came in the form of a plenary resentencing, . . . defendant[s] would have the right to be present." *E.g.*, *Martin*, 2019 WL 2289850, at *3. This concern is allayed here, as I am granting the relief requested, and "neither side has requested a hearing." *See Rose*, 2019 WL 2314479, at *7 n.7.

court to impose a sentence reduction that reflects a sentence the defendant would have received if the Fair Sentencing Act were in place at the time the crime was committed, a sentence reduction . . . is consistent with congressional intent and appropriate in this case." *Id.* at *5.

In contrast to Jerome Martin's codefendant Jerrod Martin, Judge Trager struck references in the PSR to Jerome Martin's involvement in certain acts of violence and possession of a weapon, ultimately declining to apply the murder Guidelines calculation. *See id.* at *5 (noting that Judge Trager "departed from the murder Guidelines calculation" as to codefendant Jerrod Martin); Endorsed Order, ECF No. 311 (indicating that murder Guideline was not applied to Jerome Martin). Jerrod Martin faced the same Guidelines range of 360 months to life and ultimately served a 210-month sentence, *Martin*, 2019 WL 2289850, at *1, which Judge Cogan initially deemed appropriate to reduce to approximately 16 years, *Martin*, 2019 WL 1558819, at *2, *5, before vacating that relief as moot (accounting for good-time credit, Jerrod Martin had completed the sentence), *United States v. Martin*, No. 03-cr-00795-BMC-1, ECF No. 624.

Jerome Martin has been incarcerated since December 7, 2005, meaning that he has served 162 months of his 240-month sentence. PSR Addendum 3. Even his requested 15-year sentence represents a substantial prison term commensurate with the crime he committed. While incarcerated, Martin has not had a single disciplinary infraction since February 2012—more than seven years ago. *See id.* at 4. Martin has completed numerous educational courses and obtained his GED. *Id.* Finally, he has maintained relationships with his family, as evidenced by the various letters submitted by his daughters and their mother. ECF No. 603-6. These factors also weigh in favor of a sentence reduction.

The prosecution's sole argument that I should deny discretionary relief is that "the quantity of cocaine base involved in the offense, 1.5 kilograms, would have yielded the same sentence had

8

the [Fair Sentencing Act] been in effect at the time of the original sentencing and had the government prosecuted its case subject to the [Fair Sentencing Act]'s requirements," and a contrary result would result in disparities "among similarly situated offenders" who today would be indicted with a larger drug quantity. Opp. Br. 7. But "such a speculative claim is insufficient" to deny relief. *United States v. Dodd*, 372 F. Supp. 3d 795, 799 (S.D. Iowa 2019) ("Many things might have been different if this crime had been committed and charged years later or the Fair Sentencing Act had been passed years earlier, and the Court is unwilling to engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered.").

In sum, I believe a sentence of 180 months is "sufficient, but not greater than necessary," to comply with the sentencing goals set out in 18 U.S.C. § 3553(a) and consistent with the congressional intent underlying the First Step Act.

## CONCLUSION

Defendant's motion to reduce his sentence is granted. I impose a reduced sentence of 180 months.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
June 20, 2019

Edward R. Korman
United States District Judge